# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MEREDITH L. LOWREY,** | : | **No. 3:25-cv-791** |
| | : | |
| **Plaintiff** | : | **(Caraballo, M.J.)** |
| | : | |
| **v.** | : | |
| | : | |
| **COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

## I. Introduction

Plaintiff Meredith Lowrey seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Widower's Insurance Benefits under Sections 202(e) and 223(d) and of the Social Security Act. The Court has jurisdiction pursuant to Title 42, United States Code, Section 405(g), and Title 28, United States Code, Section 636(c).

Lowrey alleges that Administrative Law Judge ("ALJ") Timothy Wing failed to properly address the following in finding that she was not disabled under the Social Security Act: (1) Lowrey's residual functional capacity; (2) medical opinion evidence; and (3) Lowrey's

subjective symptoms. Doc. 14 at 5-6. The matter is fully briefed and ripe for decision.

As explained below, ALJ Wing erred by failing to explain why he did not include a one-to-two step task limitation in Lowrey's residual functional capacity, despite deeming the relevant medical opinion persuasive. Nonetheless, this error was harmless and does not warrant remand, because the ALJ identified an additional job available to Lowry that fell within that limitation and existed in significant numbers in the national economy. ALJ Wing's findings on the remaining alleged errors were supported by substantial evidence in the record, coupled with sufficient reasoning to permit meaningful judicial review. Accordingly, the Court will affirm the Commissioner's decision to deny Lowrey's claims for widower's insurance benefits.

## II. Background[1]

On July 5, 2023, Lowrey applied for widower's insurance benefits, alleging disability beginning October 1, 2022, due to "slow heartbeat, irregular heartbeat, Raynaud's syndrome, vertigo, anxiety, depression,

[1] As the parties and the Court are well-acquainted with the facts underlying this appeal, the Court provides only a brief summary of the procedural history, and addresses the pertinent facts in the discussion below.

[and] high cholesterol." Tr. 72; 190-196. The Social Security Administration ("SSA") denied Lowrey's application on October 17, 2023, *id.* at 70-81, and again upon reconsideration on April 26, 2024. *Id.* at 82-93. Lowrey accordingly requested and received a hearing on November 7, 2024. *Id.* at 44-68; 104-05; 167-72.

On December 18, 2024, ALJ Wing issued a decision concluding that Lowrey was not disabled. *Id.* at 21-43. Lowrey appealed to the Social Security Appeals Council on January 24, 2025. *Id.* at 186-87. The Appeals Council denied her request on March 12, 2025. *Id.* at 1-7. The instant appeal followed. Doc. 1. The Commissioner provided the record on June 10, 2025. Doc. 11. The parties then filed their respective briefs, Docs. 14; 15; 16, leaving this matter ripe for decision.

## III. Discussion

### A. Standard of Review

Review of the Commissioner's decision denying a claimant's application for social security disability benefits is limited to determining whether the factual findings of the final decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).

Substantial in this context is "more than a mere scintilla of evidence but may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citation omitted). Put more pointedly, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In an adequately developed record, this can mean "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n.*, 383 U.S. 607, 620 (1966) (citations omitted).

Under this deferential standard, "[f]actual findings which are supported by substantial evidence must be upheld." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) (citations omitted); 42 U.S.C. § 405(g). This Court's role is not to re-weigh the evidence and make factual determinations, but to simply review the record and ensure that the ALJ provided "a discussion of the evidence and an explanation of reasoning for her conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009)

(citations and quotations omitted). An ALJ meets that standard by stating "in her decision which evidence she has rejected and which she is relying on as the basis for her finding." *Schaudeck v. Comm'r of SSA*, 181 F.3d 429, 433 (3d Cir. 1999) (citations omitted). Moreover, when there is countervailing evidence, an ALJ must "give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted); *see also* *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (holding that substantial evidence standard is unmet when the ALJ fails to resolve conflicts created by countervailing evidence).

**B. The ALJ's Failure to Explain His Exclusion of the One-to-Two Step Task Limitation is Not Supported by Substantial Evidence, but the Error was Harmless.**

Lowrey posits that, notwithstanding ALJ Wing's determination that state agency psychologist Dr. Martin's opinion was persuasive, the ALJ failed to include in her residual functional capacity Dr. Martin's recommendation that Lowrey could perform jobs requiring only one-to-two step tasks. Doc. 14 at 11-12. Specifically, Lowrey contends that a limitation to one-to-two step tasks is inconsistent with the reasoning level 2 requirements of the routing clerk and marker occupations

identified by the vocational expert. *Id.* at 13-14. The Commissioner responds by asserting that "no inherent and irreconcilable conflict" exists between a residual functional capacity for "simple, routine, and repetitive tasks," as determined by ALJ Wing, and reasoning level 2 jobs. Doc. 15 at 12; Tr. 28.

The ALJ is tasked with assessing a claimant's residual functional capacity. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. 1996). "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). A residual functional capacity reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five of the ALJ's analysis. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184, at *2. Although all evidence of record is considered, the ALJ's determination must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

The ALJ need not adopt every limitation expressed by an expert, as it is well-established that "[t]he ALJ – not treating or examining

physicians or State agency consultants – must make the ultimate disability and [residual functional capacity] determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Nevertheless, "while the ALJ may choose which medical opinions are persuasive, for each limitation opined necessary by a persuasive medical source, the ALJ is obligated to either: (1) incorporate that limitation in the claimant's RFC, or (2) explain the basis for discounting that limitation. Such an obligation ensures that any omission was intentional and supported by substantial evidence in the record." *Lombardo v. Bisignano*, 2026 WL 674198, at *1 (M.D. Pa. 2026) (citations and quotations omitted).

With these obligations in mind, several courts have recently held that an ALJ's "unexplained failure [] to incorporate a one-to-two-step task limitation set forth in a medical opinion deemed persuasive constitutes error which may compel remand." *Id.*; *see also* *Simon v. Kijakazi*, 2022 WL 828935, at *10 (M.D. Pa. 2022) ("While the ALJ certainly was not required to include this [one-to-two step] limitation, the ALJ was required to explain the failure to include this limitation, particularly because the ALJ found this opinion to be generally

persuasive and supported by the record."); Shipman v. Kizaki, 2023 WL 5599607, at *8 (M.D. Pa. 2023) (same); Pokorny v. Kijazi, 2023 WL 6988360, at *6 (M.D. Pa. 2023) (same). As a general matter, this Court agrees that remand may be appropriate in certain scenarios.

At issue here are the medical opinions of two state agency experts, Roger K. Fretz, PhD, and Virginia Carolyn Martin, PsyD. On October 2, 2023, Dr. Fretz completed the initial state agency assessment, in which he identified mild to moderate mental limitations and determined Lowrey was "capable of performing simple tasks." Tr. 80. On March 27, 2024, Dr. Martin completed the state agency reassessment and made, in relevant part, the following determination:

> The claimant can understand, retain, and follow simple instructions (i.e., *perform one- and two-step tasks*). The claimant can make simple decisions and would not require special supervision in order to sustain a routine. The claimant can perform simple, routine, repetitive tasks in a stable environment. The claimant is capable of performing within a schedule and at a consistent pace.

*Id.* at 91 (emphasis added).

ALJ Wing found both opinions persuasive and consistent with limiting Lowrey "to simple work, with restricted social contact," though he failed to address the one-to-two step limitation. *Id.* at 35-36. ALJ

Wing's failure "to acknowledge or account for this limitation is notable because: (1) a limitation to simple tasks is not equivalent to a one-to-two-step limitation; and (2) numerous courts have concluded that occupations requiring a reasoning level of 2 are not compatible with one-to-two-step task limitations." *Lombardo*, 2026 WL 674198, at *2.

ALJ Wing concluded that Lowrey could perform work in the national economy; specifically, the occupations of cleaner (DOT# 323.687-014), marker (DOT# 209.587-034), and routing clerk (DOT# 222.587-038). Tr. 38. Importantly, two of these roles—marker and routing clerk—are reasoning level 2 positions that exceed the one-to-two step task limitation imposed by Dr. Martin. Tr. 91. Ordinarily, the failure to account for such limitation would warrant remand for further consideration by the Commissioner. *See Lombardo*, 2026 WL 674198, at *2. Here, however, remand is unnecessary because ALJ Wing's error was harmless.

The burden is on the claimant to show that an alleged error impacted the ALJ's outcome. *See Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003) (finding harmless error where the ALJ's mistake "would have no effect on the ALJ's decision"). "The ALJ satisfies her

burden of production at [step five] when she identifies *at least one* occupation with a significant number of jobs in the national economy that the claimant can perform." *Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) (first citing 20 C.F.R. § 404.1566(b); and then citing § 416.966(b)) (emphasis added). Accordingly, when the ALJ identifies at least one job existing in significant numbers in the national economy, any error concerning the claimant's ability to perform other jobs will not warrant remand. *See Soto v. Kijakazi*, 2022 WL 4358087, at *6-7 (M.D. Pa. 2022) (affirming the Commissioner's denial of benefits despite the ALJ's failure to explain his exclusion of a one-to-two step task limitation, because the claimant could perform the reasoning level 1 job of cleaner); *see also Shingler v. Kijakazi*, 2022 WL 273426, at *12-13 (M.D. Pa. 2022) (same).

Here, the vocational expert testified that the job of cleaner, which has a reasoning level of 1, was available and existed in significant numbers in the national economy. Tr. 62. To perform a job with a reasoning level of 1, an employee must be able to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702.

Thus, the cleaner position is consistent with the one-to-two step task limitation. Lowrey conceded this point. *See* Doc. 14 at 13 ("There is no question that a limitation to one-to-two step tasks is compatible with jobs requiring a reasoning level of 1."). ALJ Wing, therefore, satisfied his step five burden by properly identifying one occupation that Lowrey could perform. Tr. 38.

Lowrey nonetheless contends that she is unable to perform the job because her mental limitations may prevent her from completing any required training period. Doc. 16 at 4-5. According to Lowrey, because the cleaner role has a specific vocational preparation level of 2, which may require a training period of up to one month, an individual limited to one-to-two step tasks would "presumably" be unable to perform the job. *Id.* The Court does not credit this argument, as the ALJ—not the Court—is the proper authority to make factual determinations concerning Lowrey's limitations and performance capacity. *Medranda v. O'Malley*, 2024 WL 4100567, at *8 (S.D.N.Y. 2024).

In sum, although ALJ Wing erred by failing to explain why a one-to-two step task limitation was unnecessary when formulating Lowrey's residual functional capacity, this error was harmless, because he

identified one occupation existing in significant numbers in the national economy that Lowrey could perform. Accordingly, remand is unwarranted on this ground.

### C. The ALJ's Remaining Factual Determinations Were Supported by Substantial Evidence.

#### *a. Evidence of Lowrey's Symptoms of Dizziness and Headaches*

Lowrey also alleges that ALJ Wing failed to address evidence establishing that her symptoms, such as dizziness and headaches, had more than a minimal effect on her ability to do light work. Doc. 14 at 7-9. The Commissioner responded that (1) mere diagnosis is not enough to establish a limitation; and (2) regardless, ALJ Wing discussed this evidence in detail throughout his decision. Doc. 15 at 7-8. Upon review of the record, the Court finds that ALJ Wing properly considered the evidence concerning Lowrey's symptoms and that his determination was supported by substantial evidence.

ALJ Wing classified Lowrey's headache and dizziness symptoms as non-severe impairments. Tr. 27. He also "included limitations to address [Lowrey]'s non-severe impairments and subjective complaints," where appropriate, in formulating Lowrey's residual functional

capacity. *Id.* at 27-28, 31. Finally, ALJ Wing explicitly found that Lowrey's subjective "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 33.

Accordingly, ALJ Wing's factual determinations concerning Lowrey's complaints of dizziness and headaches are supported by substantial evidence.

***b. Evidence of Lowrey's Fibromyalgia***

Next, Lowrey contends that ALJ Wing erred in evaluating her fibromyalgia. Doc. 14 at 18. More expansively, Lowrey challenges ALJ Wing's emphasis on the lack of objective evidence and posits that he should have afforded greater weight to her subjective reports. *Id.*

ALJ Wing correctly noted that fibromyalgia often presents "with an absence of abnormal diagnostic findings and laboratory tests." Tr. 28. However, he further explained that a "claimant must provide objective medical evidence of a history of widespread pain, at least eleven positive tender points on physical examination, and evidence that other disorders that could cause the symptoms were excluded." *Id.* Additionally, where the "claim of disability is not attributed exclusively

to fibromyalgia . . . , it is quite appropriate for the ALJ to consider the objective medical evidence of record." *Trauterman v. Comm'r of Soc. Sec.*, 296 F. App'x 218, 220–21 (3d Cir. 2008). Here, Lowrey's disability claim was premised on several additional impairments, including "slow heartbeat, irregular heartbeat, Raynaud's syndrome, vertigo, anxiety, depression, [and] high cholesterol." Tr. 72; 190-196.

Accordingly, it was appropriate for ALJ Wing to consider the objective medical evidence concerning Lowrey's fibromyalgia.

### *c. Evidence Regarding Job Data*

Finally, Lowrey alleges that the vocational expert offered only DOT numbers and job data during the hearing, which is not permitted under SSR 24-3P. *See* SSR 24-3p. The Commissioner responds that any argument premised on SSR 24-3p is misplaced, as SSR 00-4p remained in effect when ALJ Wing's decision was issued. Doc. 15 at 15; *see* SSR 00-4p (Rescinded). In her reply brief, Lowrey contends that "no data, methods, or sources" were presented during the hearing, and that, "[e]ven before SSR 24-3p, it was long recognized that the DOT does not contain job number data and that it is the Commissioner's burden at Step Five." Doc. 16 at 6.

While Lowrey is correct that DOT codes do not provide statistical data, *see* Evans v. Kijakazi, 2023 WL 2761125, at *8 (M.D. Pa. 2023), the vocational expert did not testify about the methodology she used to calculate the number of jobs available in the national economy. Rather, she testified about which jobs were available to the hypothetical individual ALJ Wing described, their corresponding DOT numbers, and the number of positions. Tr. 62. The vocational expert also confirmed that her testimony was consistent with the DOT, other publications relied upon in her field, and her "over 45 years of experience doing labor market surveys and job placement." *Id.* at 62-63. This is sufficient for purposes of the Court's substantial evidence review. *See* *Biestek v. Berryhill*, 587 U.S. 97, 105-06 (2019) ("Assuming no demand, a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data.").

Accordingly, the Court finds that ALJ Wing's determination concerning the number of jobs available was supported by substantial evidence, and remand is not warranted.[2]

[2] Lowrey also contends that "[a]n ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record." Doc. 14 at 16. Assuming, for the sake of argument, that Lowrey was represented by counsel at the hearing, and her counsel questioned the vocational expert about the sources she used in her calculations, the

## IV. Conclusion

For the reasons set forth above, the Court will **AFFIRM** the Commissioner's decision and **DENY** the Plaintiff's request for relief. A separate order shall follow.

Date: September 30, 2026

***s/ Phillip J. Caraballo***
Phillip J. Caraballo
United States Magistrate Judge

---

outcome would not change. *See* *White v. Kijakazi*, 44 F.4th 828, 834–35 (9th Cir. 2022) ("Indeed, VE job-numbers testimony may constitute substantial evidence supporting a finding of no disability even if the VE refuses to disclose the specific, non-public data sources on which the estimates were based.") (citing *Biestek*, 587 U.S. at 107-08).